# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| JACINTO ROSARIO | : | DOCKET NO. 2:06-cv-1122 Section P |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| ALBERTO GONZALES, ET AL. | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 by petitioner, Jacinto Rosario. This matter was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

Petitioner is under a final removal order, and he has been in post-removal-order detention since December 12, 2005. In his petition, he challenges his post-removal-order detention as being indefinite and unconstitutional. He claims that there is no significant likelihood of his being removed to Nigeria in the reasonably foreseeable future.

Based upon the evidence in the record, the undersigned determined that an evidentiary hearing was necessary for the adjudication of this *habeas corpus* petition. An evidentiary hearing was held on January 30, 2007, and the evidence was limited to whether there is a significant likelihood of removing Petitioner in the reasonably foreseeable future, whether the petitioner has been detained beyond what is reasonably necessary to secure his removal, and/or whether petitioner has taken steps to hamper the removal efforts of the United States Immigration & Customs Enforcement. [doc. 18].

## FACTUAL SUMMARY

The court will summarize the facts regarding petitioner and his detention as best it can from

the evidence in the record and the testimony presented at the evidentiary hearing.

Petitioner is a native and citizen of Cape Verde who entered the United States on May 16, 1989 as an immigrant. *See* Doc. 16, Exhibit 1.

On April 16, 2004, petitioner was convicted in a Rhode Island state court of larceny of less than $500. For this offense, he was sentenced to a term of one year (suspended) and a one year term of probation. On May 25, 2005 petitioner was convicted in a Rhode Island state court of "Manufacture/Deliver/Possess with Intent Schedule I/II" (cocaine). For this offense, petitioner was sentenced to a term of five years, four months, fifty-six months suspended, and fifty-six months probation. *Id.*

Based upon his convictions, a Notice to Appear was issued to petitioner on June 20, 2005, charging him with being subject to removal under INA § 241(a)(2)(A)(iii) as an alien convicted of an aggravated felony. *See* Doc. 16, Exhibit 1. He was taken into immigration custody this same date. *See* Doc. 16, Exhibit 2. On August 9, 2005, an immigration judge in Oakdale, Louisiana found petitioner to be removable as charged and ordered him removed from the United States to Cape Verde. *See* Doc. 16, Exhibit 3. Petitioner appealed this decision to the Board of Immigration Appeals (BIA), and on December 12, 2005, the BIA affirmed the decision of the immigration judge. *See* Doc. 16, Exhibits 4 & 5.

On February 27, 2006, petitioner filed a Petition for Review in the United States Court of Appeals for the First Circuit. *See Rosario v. Gonzales*, 06-1367 (1st Cir.). He also filed a motion to stay his removal. On March 17, 2006, the First Circuit denied his motion for a stay and dismissed his petition for lack of jurisdiction, noting that petitioner must file his Petition for Review in the Fifth Circuit. *Id.*

On March 29, 2006, petitioner filed a Petition for Review with the United States Court of

Appeals for the Fifth Circuit. *See* Doc. 16, Exhibit 7; *Rosario v. Gonzales*, 06-60277 (5th Cir.). Incorporated in the Petition for Review was a Motion for Stay of Removal. In response to this petition, the respondent filed a Motion to Dismiss for lack of jurisdiction. On June 12, 2006, the Fifth Circuit denied the Motion for Stay of Removal and granted the Motion to Dismiss. *Id.*

On December 28, 2005, a travel document request was sent to the Consulate General of Cape Verde. *See* Doc. 16, Exhibit 8. The Consulate advised the Immigration & Customs Enforcement (ICE) that the request was received, and a telephonic interview was requested. *Id.* On February 28, 2006 a telephonic interview was conducted, and the Consulate advised ICE that a travel document would be issued upon the dissolution of any pending court matters.

On March 2, 2006, the ICE conducted a Post Order Custody Review. Although one reviewing officer recommended releasing petitioner on an Order of Supervision, on March 24, 2006 a Decision to Continue Detention was rendered. *See* Doc. 16, Exhibit 8, p.7. This decision was based primarily upon the finding that petitioner's pending court proceedings were preventing his removal. *See* Doc. 16, Exhibit 9.

The Consulate General of Cape Verde was notified of the decisions of the First and Fifth Circuits on May 15, 2006 and August 16, 2006, respectively. *See* Doc. 16, Exhibits 10 & 11. On September 1, 2006, ICE was advised by the Consulate for Cape Verde that the travel document request was still pending. *See* Doc. 16, Exhibit 11.

On August 23, 2006, a second Decision to Continue Detention was issued by ICE. It was noted that a travel document request was pending; that Cape Verde regularly issues travel documents; and that there is no indication that one will not be issued in petitioner's case. *See* Doc. 16, Exhibit 12.

At the hearing on January 30, 2007, petitioner's deportation officer, Mr. Morton, testified that

he received petitioner's file in October, 2006 and since that time he has had written and verbal communications with the Cape Verde Consulate. He stated that on October 17, 2006, he was told that petitioner's request for a travel document was pending but that the case had been set aside until petitioner could resolve the personal tragedy that had beset him when his fiancee was killed and his daughter was left without a mother. Mr. Morton also testified that the Consulate was aware of the evidentiary hearing set in this matter[1] and that on December 18, 2006, he was told that a decision on the travel document would be withheld until the hearing is concluded and a decision is rendered.

In light of this testimony and the other evidence in the record, the government argues that petitioner's removal has not yet occurred because of his pending litigation and requests for stays. The government contends that there is a significant likelihood that petitioner's removal will occur in the reasonably foreseeable future once this pending matter is resolved.

## LAW AND ANALYSIS

The issue before the court is whether petitioner's prolonged post-removal-order detention is lawful. The government argues that petitioner's detention is lawful and that petitioner's removal has been delayed because of his court proceedings.

Following an order of removal, the Attorney General is given 90 days to effect the removal of the alien. INA § 241(a)(1). This 90-day period of time is referred to as the removal period. During this removal period, the alien is subject to detention. INA § 241(a)(2). If the alien is not removed during the removal period, the alien is generally released to supervision. INA § 241(a)(3).

Detention can be extended beyond the 90 day removal period in limited circumstances. INA § 241(a)(6) authorizes the continued detention of certain inadmissible or criminal aliens, such as

---

[1] Petitioner testified that he did not notify the Consulate of his personal tragedy or pending litigation but stated that his mother had.

4

petitioner, if the Attorney General determines that the alien is a risk to the community or unlikely to comply with the order of removal. Because the Supreme Court concluded that indefinite detention of aliens under the circumstances set forth in § 241(a)(6) would raise serious constitutional concerns, it construed the statute to contain an implicit "reasonable time" limitation. *Zadvydas v. Davis*, 121 S.Ct. 2491, 2495 (2001). The Supreme Court held that in order to be constitutional, detention pursuant to INA §241(a)(6) must be limited to a period of the time reasonably necessary to bring about the alien's removal. *Zadvydas,* 121 S.Ct. at 2498. The Supreme Court went on to recognize six months as a presumptively reasonable period of detention following a final order of removal. *Zadvydas*, 121 S.Ct. at 2504.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut this showing. And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas,* 121 S.Ct. 2505.

Additionally, an alien may be detained beyond the 90 day removal period pursuant to the statutory authority of INA § 241(a)(1)(C).[2] This statute provides for the suspension of the removal period whenever an alien acts in a manner to prevent his removal. This statute, like § 241(a)(6), does not contain an express limitation on the length of time that an alien may be detained. However, as the Ninth Circuit has observed, INA § 241(a)(1)(C) does not present the same constitutional concerns

---

[2]**(C) Suspension of period**
The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

5

raised by INA § 241(a)(6) because "the risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention." *Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1060 (9th Cir. 2003). Thus, an alien cannot assert a viable constitutional challenge to his indefinite detention when such detention is due to own actions. *Id.* at 1061.

In *Andrade v. Gonzales,* 459 F.3d 538 (5th cir. 2006), the Fifth Circuit reiterated that the Supreme Court's holding in *Zadvydas* "creates no specific limits on detention"; that "'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'"; and that "[t]he alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade*, 459 F.3d at 543, quoting *Zadvydas*, 121 S.Ct. at 2505. In that case, Andrade "offered nothing beyond his conclusory statements suggesting that he [would] not be immediately removed to Cape Verde following the resolution of his appeals," and the Fifth Circuit found his constitutional challenge to his detention to be without merit. *Andrade,* 459 F.3d at 543-544.

In this case, the facts before the court establish that petitioner has been in post-removal-order detention since December 12, 2005, a period greater than six months. However, there is significant evidence in the record that, unlike the detainees in *Zadvydas*, petitioner's detention is not potentially permanent and that petitioner is responsible for his own plight. The evidence before the court establishes that Cape Verde is not unwilling to issue a travel document for petitioner, it is merely awaiting petitioner's exhaustion of all judicial remedies before it does so. While petitioner has a legal right to seek judicial relief, it is apparent that his Petitions for Review, requests for stays of removal, this petition for writ of *habeas corpus*, and his mother's notification of Cape Verde regarding petitioner's personal tragedy has hampered the ability of ICE to deport petitioner. Accordingly, the

6

court finds that because petitioner's continuing litigation is the cause of his continued detention, he cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future. Once petitioner's legal proceedings are concluded, it is likely that he can and will be removed to Cape Verde.

Accordingly,

IT IS RECOMMENDED that the petition for writ of *habeas corpus* be DENIED and DISMISSED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

**THUS DONE AND SIGNED** in Chambers at Lake Charles, Louisiana, February 2, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE